IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Robert E. Blackburn**

Civil Action No. 15-cv-01387-REB

TERESA L. MANNING,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

---

## ORDER AFFIRMING COMMISSIONER

---

**Blackburn, J.**

      The matter before me is plaintiff's **Complaint** [#1],[1] filed June 29, 2015, seeking

review of the Commissioner's decision denying plaintiff's claim for disability insurance

benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*  I have

jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g).  The

matter has been fully briefed, obviating the need for oral argument.  I affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

      Plaintiff alleges that she is disabled as a result of type II diabetes mellitus,

peripheral neuropathy in her feet, right hip bursitis, hypothyroidism, obstructive sleep

apnea, and obesity.  After her application for disability insurance benefits was denied,

plaintiff requested a hearing before an administrative law judge.  This hearing was held

on September 23, 2013.  At the time of this hearing, plaintiff was 52 years old.  She has

---

      [1]  "[#1]" is an example of the convention I use to identify the docket number assigned to a specific
paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention
throughout this order.

a college education and past relevant work experience as a bookkeeper/office manager, soil analyst, and CAD operator.  She has not engaged in substantial gainful activity since December 31, 2009, her alleged date of onset.

The ALJ found plaintiff was not disabled and therefore not entitled to disability insurance benefits.  Although the evidence established that plaintiff suffered from severe impairments, the judge concluded the severity of those impairments did not meet or equal any impairment listed in the social security regulations.  Other alleged impairments, including, relevantly, depression, were found to be not severe.  The ALJ found plaintiff had the residual functional capacity to perform a reduced range of sedentary work with postural and environmental restrictions.  Because this determination did not preclude plaintiff's past relevant work as a bookkeeper and office manager, the ALJ found plaintiff not disabled at step four of the sequential evaluation.  Plaintiff appealed this decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the impairments in making a disability determination."  *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of

2

a severe impairment or combination of impairments does not require a finding that an

individual is disabled within the meaning of the Social Security Act.  To be disabling, the

claimant's condition must be so functionally limiting as to preclude any substantial

gainful activity for at least twelve consecutive months.  *See Kelley v. Chater,* 62 F.3d

335, 338 (10th Cir. 1995).

The Commissioner has established a quinquepartite sequential evaluation

process for determining whether a claimant is disabled:

> 1.   The ALJ must first ascertain whether the claimant is
>      engaged in substantial gainful activity. A claimant who is
>      working is not disabled regardless of the medical findings.
>
> 2.   The ALJ  must then determine whether the claimed
>      impairment is "severe."  A "severe impairment" must
>      significantly limit the claimant's physical or mental ability to
>      do basic work activities.
>
> 3.   The ALJ must then determine if the impairment meets or
>      equals in severity certain impairments described in Appendix
>      1 of the regulations.
>
> 4.   If the claimant's impairment does not meet or equal a listed
>      impairment, the ALJ must determine whether the claimant
>      can perform his past work despite any limitations.
>
> 5.   If the claimant does not have the residual functional capacity
>      to perform her past work, the ALJ must decide whether the
>      claimant can perform any other gainful and substantial work
>      in the economy.  This determination is made on the basis of
>      the claimant's age, education, work experience, and residual
>      functional capacity.

20 C.F.R. § 404.1520(b)-(f).  *See also Williams v. Bowen* 844 F.2d 748, 750-52 (10th

Cir. 1988).  The claimant has the initial burden of establishing a disability in the first four

steps of this analysis.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294

n.5, 96 L.Ed.2d 119 (1987).  The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy.  *Id.*  A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence.  *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown*, 912 F.2d at 1196.  It requires more than a scintilla but less than a preponderance of the evidence.  *Hedstrom v. Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992).  "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).  Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner.  *Id.*

### III.  LEGAL ANALYSIS

Plaintiff maintains the ALJ committed reversible error in (1) declining to ascribe more weight to the opinion of her treating physician; (2) discrediting her subjective

complaints of pain and functional limitation; and (3) failing to find that her depression

was a severe impairment or to account for limitations in concentration, persistence, and

pace in assessing her residual functional capacity.  Finding no reversible error in any of

these particulars, I affirm.

Plaintiff first assigns error to the ALJ's decision to afford reduced weight to the

opinion of her primary care physician, Dr. Rick Tormholen.  In December 2012, Dr.

Tormholen completed a medical source statement in which he opined that plaintiff could

sit for no more than 15 minutes at a time for no more than four hours a day and stand

for no more than five minutes at a time for no less than two hours a day.  He suggested

further that plaintiff could lift less than ten pounds rarely and would need to take

unscheduled breaks every 20 to 30 minutes during the day.  He stated that she could be

expected to be off task 25% or more of the workday due to symptoms related to her

impairments and was capable of only low stress work. (Tr. 340-344.)  The ALJ found

this opinion entitled to "some weight," but not to controlling (*i.e.*, dispositive) weight,

principally because it he found the opinion unsubstantiated by Dr. Tormholen's own

treatment records and appeared to be based largely on plaintiff's own self-reported

symptoms rather than objective clinical signs and findings.  (Tr. 22.)

The opinion of a treating source is entitled to controlling weight when it is "well-

supported by medically acceptable clinical and laboratory diagnostic techniques and is

not inconsistent with other substantial evidence in the case record."  20 C.F.R. §

404.1527(c)(2); ***see also Watkins v. Barnhart***, 350 F.3d 1297, 1300 (10th Cir. 2003).  A

treating source opinion cannot be rejected absent good cause for specific and legitimate

reasons clearly articulated in the hearing decision.  ***Watkins***, 350 F.3d at 1301.  Good

cause may be found where the treating source's opinion is brief, conclusory, or unsupported by the medical evidence. *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).

In discounting Dr. Tormholen's opinion, the ALJ relied principally on his conclusion that the treatment records did not evidence the type of medical findings which would support the severe work-related limitations Dr. Tormholen endorsed. (Tr. 22.) The consistency *vel non* of a treating source's opinion with the medical record is an appropriate consideration in weighing that opinion, as is whether the opinion is supported by medical signs and laboratory findings. *See* 20 C.F.R. §§ 404.1527(c)(3) & (4). The record here reflects that plaintiff saw Dr. Tormholen, her family doctor, exclusively for treatment of her impairments. Her treatment with Dr. Tormholen was regular but not frequent, given the alleged severity of her impairments.[2] The treatment she did receive was relatively conservative, limited largely to medication management.

Moreover, the record more than adequately substantiates the ALJ's conclusion that plaintiff's course of treatment adequately mitigated her pain, a fact the ALJ specifically noted elsewhere in his opinion. (Tr. 20.) *See Pacheco v. Sullivan*, 931 F.2d 695, 698 (10th Cir. 1991) (impairment which responds to treatment is not disabling); *Klein v. Colvin*, 25 F.Supp.3d 1338, 1344 (D. Colo. 2014) (same). Admittedly, trial and error was required to find a combination of medications adequate to control plaintiff's

---

[2] Plaintiff saw Dr. Tormholen four times each in 2009 and 2010, three times in 2011, and just twice in 2012, the last in connection with her request that the doctor complete her disability paperwork, which was more than ten months after her previous appointment. (*See* Tr. 310-310-338, 340-351.)

diabetic nerve pain.[3]  Nevertheless, in April 2011 plaintiff reported that methadone was "[a]wesome for nerve pain," and she was noted to be "much improved" and "[a]ble to shop with [her] daughter." (Tr. 333.)[4]  At her next visit in July 2011, plaintiff's neuropathic pain was reported as "doing ok." (Tr. 335).  The record contains no subsequent complaints of neuropathic pain until plaintiff consulted Dr. Tormholen for completion of her disability paperwork in December 2012. (Tr. 350-351.)  Undoubtedly, such powerful medications had side effects.  Indeed, plaintiff initially reported that the methadone had caused her "some sedation," which was nevertheless "improving." (Tr. 333.)  By her next visit, plaintiff reported no longer feeling sedated on methadone. (Tr. 335.)  The records contain no other mention of fatigue – and no mention whatsoever of memory loss or difficulty concentrating – until plaintiff sought Dr. Tormholen's opinion in connection with her claim for disability. (*See* Tr. 350.)

Similarly, plaintiff's hip bursitis was consistently noted as having responded favorably to injections (Tr. 315-316, 335-336), a fact on which the ALJ specifically relied in addressing plaintiff's credibility (Tr. 20). *See Best-Willie v. Colvin*, 514 Fed. Appx. 728, 733 (10th Cir. March 26, 2013) ("Although there was not a contemporaneous discussion of this evidence in discounting [the medical source's] opinion, in reading the ALJ's decision as a whole, it is evident [the medical source's] opinion is inconsistent with

---

[3]  Plaintiff's diabetes itself, however, was consistently reported as well-controlled, with only rare hypoglycemic episodes. (*See* Tr. 312, 315, 330, 332, 333, 337-338, 348-349, 352-353.)

[4]  Admittedly, the ALJ's suggestion that Dr. Tormholen's treatment records do not document *any* sensory loss is not accurate in light of plaintiff's well-documented history of diabetic neuropathy. (*See* Tr. 22.)  Nevertheless, any error in this regard undoubtedly was harmless, as the record more than adequately supports the ALJ's characterization of Dr. Tormholen's opinions as inadequately substantiated by his own records. *See Williams v. Chater*, 1995 WL 490280 at *2 (10th Cir. Aug.16, 1995) ("Procedural imperfection that does not affect a party's substantive rights is not a basis for reversal."); *Bernal v. Bowen*, 851 F.2d 297, 303 (10th Cir. 1988) (mere fact of error does not warrant remand if the ALJ's determination is otherwise supported by substantial evidence).

the record."); *Endriss v. Astrue*, 506 Fed. Appx. 772, 777 (10th Cir. Dec. 26, 2012) (ALJ "is not required to continue to recite the same evidence again" if already discussed earlier).   Again, the only time plaintiff suggested that her hip pain had not responded to treatment was when she consulted Dr. Tormholen for completion of disability paperwork (*see* Tr. 350), nearly 18 months after her last documented injection (Tr. 335-336).

Given this record, it is difficult to fault the ALJ's conclusion that Dr. Tormholen's opinion was informed more by plaintiff's subjective complaints than by the objective medical evidence.   While it is error to discredit a medical source opinion *solely* because it is based on a claimant's subjective complaints, *see Nieto v. Heckler*, 750 F.2d 59, 60-61 (10th Cir. 1984), the ALJ here did not rely on that reason alone (or even principally) in considering Dr. Tormholen's opinion.   Moreover, "when the ALJ has properly discredited a claimant's subjective complaints of pain, he need not accept a medical source opinion premised on a contrary estimation of the claimant's credibility regarding her own functional and other limitations."   *Anderson v. Colvin*, 2013 WL 3216140 at *4 (D. Colo. June 25, 2013).   It is thus to the issue of credibility that I now turn.[5]

The ALJ found that plaintiff's subjective complaints concerning the intensity, persistence, and limiting effects of her impairments were not entirely credible because

---

[5] Plaintiff also suggests (under the auspices of her credibility argument) that the ALJ failed to consider her capacity to perform the requirements of competitive work on a sustained basis.   Although plaintiff sets forth the relevant legal principles and standards, she does describe precisely how she believes the ALJ failed to follow them.   The court is under no obligation to consider such inadequately developed arguments.   *See Carter v. Colvin*, 27 F.Supp.3d 1142, 1148 n.4 (D. Colo. 2014), *aff'd*, 597 Fed. Appx. 501 (10th Cir. Jan. 9, 2015).   Nevertheless, to the extent plaintiff means to suggest that plaintiff's subjective complaints show an incapacity to perform work on a regular and continuing basis, that argument is addressed herein.

they were unsupported by the medical evidence.  (Tr. 20.)[6]  In general, "credibility

determinations 'are peculiarly the province of the finder of fact,' and should not be upset

if supported by substantial evidence."  *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir.

2001) (citing *Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995)).  So long as the

ALJ links his credibility assessment to specific evidence in the record, his determination

is entitled to substantial deference.  *Id.* at 910; *see also Qualls v. Apfel*, 206 F.3d

1368, 1372 (10th Cir. 2000).

        Such deference is warranted on this record.  The ALJ considered plaintiff's

testimony as to the effects of each of her alleged impairments and recounted how each

was undermined by the medical evidence of record.[7]  As noted above, there is little in

plaintiff's treatment history to substantiate her allegations of disabling limitations.  Her

treatment was conservative and largely effective.  Although plaintiff plainly still suffers

from pain related to her impairments, "disability requires more than mere inability to

work without pain."  *Brown v. Bowen*, 801 F.2d 361, 362–63 (10th Cir. 1986) (citation

and internal quotation marks omitted).  *See also Qantu v. Barnhart*, 72 Fed. Appx.

807, 811 (10th Cir. 2003) ("We emphasize that a claimant's inability to work pain-free,

standing alone, is not sufficient reason to find her disabled.").  Although plaintiff points to

---

        [6]  The ALJ also relied on his observation that plaintiff stopped working not because of the effects
of her impairments but because she was laid off, and continued to seek employment in her field for some
period of time thereafter.  (Tr. 21-22.)  These are appropriate considerations in the assessment of a
claimant's credibility.  *See, e.g.*, *Medhaug v. Astrue*, 578 F.3d 805, 816-17 (8th Cir. 2009)*; Bruton v.
Massanari*, 268 F.3d 824, 828 (9th Cir. 2001), *as amended* (Nov. 9, 2001); *Marrs v. Colvin*, 2014 WL
545738 at *4 (D. Kan. Feb. 11, 2014); *Buckman v. Astrue*, 2012 WL 3596186 at *8 (E.D. Mo. Aug. 21,
2012); *Shehan v. Astrue*, 2009 WL 2524573 at *3 (C.D. Cal. Aug. 17, 2009).

        [7]  Although the ALJ referred to exhibits globally in this portion of his opinion (*see* Tr. 20-21), a
practice which this court has found problematic, *see Cira v. Colvin,* 67 F.Supp.3d 1206, 1210 (D. Colo.
Sept. 8 2014), earlier in his opinion, the ALJ referred to specific records within these same exhibits in
recounting the medical evidence (*see* Tr. 16-18).  The court thus is able to meaningfully review the ALJ's
opinion.  *McKee v. Colvin*, – F.Supp.3d –, 2016 WL 1222972 at *3 (D. Colo. March 29, 2016).

some evidence in the record which could be construed as supporting her subjective complaints, given the supportability of the ALJ's opinion, the court is not empowered to reweigh the evidence in the manner plaintiff's argument would require. *See Thompson*, 987 F.2d at 1487; *Zagorianakos v. Colvin*, 81 F.Supp.3d 1036,1045 (D. Colo. 2015).[8]

Finally, plaintiff maintains the ALJ erred in finding that her depression was not a severe impairment and in refusing to incorporate limitations attributable to deficits in concentration, persistence, and pace in her residual functional capacity. I perceive no error on either basis.

At step two of the sequential evaluation, the issue is whether the claimant suffers from at least one "severe" medically determinable impairment. *See Dray v. Astrue*, 353 Fed. Appx. 147, 149 (10th Cir. Nov. 17, 2009). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). *See also* **Social Security Ruling 85-28**, 1985 WL 56856 at *3 (SSA 1985) (impairment which is merely a "slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered" is not severe). "Thus, step two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.'" *Id.* (quoting *Bowen v. Yuckert*, 482 U.S. 137, 156, 107 S.Ct. 2287, 2298, 96 L.Ed.2d 119 (1987) (O'Connor, J., concurring)). Because the conclusion that a claimant has at least one

---

[8] Nevertheless, much of this evidence consists of plaintiff's own reports of pain and limitation. Plaintiff's reliance on this evidence as bolstering her credibility is therefore bootstrapping.

severe impairment requires the ALJ to proceed to the next step of the sequential evaluation, "the failure to find a particular impairment severe at step two is not reversible error as long as the ALJ finds that at least one other impairment is severe." *Id.* As this is precisely what happened here, this aspect of plaintiff's argument must be rejected.[9]

Plaintiff further maintains that the ALJ nevertheless was obligated to consider work-related mental limitations in his residual functional capacity assessment. *See* 20 C.F.R. § 404.1523. Specifically, she contends the ALJ erred in not accounting for the mild difficulties in concentration, persistence, and pace found at step two of the sequential evaluation when he formulated her residual functional capacity at step four.

This argument does not bear scrutiny. The Tenth Circuit has made clear that an ALJ's findings at steps two and three of the sequential evaluation need not necessarily be translated into work-related functional limitations in assessing residual functional capacity at step four. *See Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015); *Suttles v. Colvin*, 543 Fed. Appx. 824, 826-27 (10th Cir. Oct. 31, 2013). *See also Miller v. Astrue*, 2012 WL 1388706 ast *5 (D. Colo. April 23, 2012), *aff'd*, 520 Fed. Appx. 741 (10th Cir. April 9, 2013). Moreover, while the regulations obligate the ALJ to *consider* whether the plaintiff's severe and non-severe impairments in combination are severe, *see* 20 C.F.R. § 404.1523, they do not require him to specifically *address* all such factors, *see Birkle v. Colvin*, 82 F.Supp.3d 1308, 1314 n.8 (D. Colo. 2015). The ALJ

---

[9] This argument fails substantively as well, since the ALJ's conclusion that plaintiff's depression was not severe is well-supported by the record. As the ALJ discussed at length, plaintiff's depression was a long-standing condition that remained stable with conservative treatment both before and after the alleged date of onset. (Tr. 14-15.) Indeed, on the infrequent occasions when plaintiff reported anything about her depression to Dr. Tormholen, she consistently noted that mentally she was "doing ok" despite various significant life stressors. (*See, e.g.*, Tr. 311 (depression noted as stable despite job loss), 315 ("[M]oods doing ok despite lots of stress with mother-in-law living with them"), 333 ("Doing ok despite stress of mother in law not wanting to be part of the family/isolating self in room/considering nursing home + niece and 3 kids moved in due to divorce").)

here stated that his residual functional capacity assessment "reflects the degree of limitation the undersigned as found in the 'paragraph B' mental functional analysis" at step three.  (Tr. 15.)[10]  The court generally takes a lower court at its word when it says it has considered a matter.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).  I see nothing in this record to cast doubt on the ALJ's representation that he considered these matters.  His implicit conclusion that there was no basis for including further limitations attributable to plaintiff's mental impairment does not constitute reversible error.

## IV.  ORDERS

The record before me supports the ALJ's determination that plaintiff had the residual functional capacity for a reduced range of sedentary work, despite her severe impairments and their acknowledged symptoms.  Thus, and for the reasons set forth herein, I find and conclude that there was no reversible error in the ALJ's disability determination, which accordingly must be affirmed.

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is affirmed.

Dated April 19, 2016, at Denver, Colorado.

BY THE COURT:

Bob Blackburn

Robert E. Blackburn
United States District Judge

---

[10]  At step three of the sequential analysis, the ALJ must consider whether each of the claimant's impairments meets or equals in severity the criteria of an impairment described in the regulations as presumptively disabling.  Under section 12.00 of the listings, which sets for the criteria applicable to various mental disorders, each of the nine diagnostic categories identified therein is defined by three criteria: a statement describing the disorder (the capsule definition), a set of medical findings (the paragraph A criteria) and a set of impairment-related functional limitations (the paragraph B criteria).  Alternative functional criteria (the paragraph C criteria) are included for certain classes of disorders.  A claimant's impairment meets or equals a listed impairment, and therefore is presumed to be disabling, if the diagnostic description of the capsule definition and the criteria of both paragraphs A and B, or A and C, where appropriate, are satisfied.  20 C.F.R., Pt. 404, Subpt. P, app. 1, § 12.00A.